IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA HOSKINS,

            Plaintiff,

v.

JANA RUETER, *et al.*,

            Defendants.

Case No. 20-cv-766-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Plaintiff Joshua Hoskins's motion for preliminary injunction (Doc. 12). Defendant Jeff Dennison filed a response (Doc. 20) to the motion. Hoskins filed a reply (Doc. 23). On October 20, 2020, the Court held an evidentiary hearing on the motion. After the hearing, both Hoskins (Docs. 38, 42, 55, and 59) and Defendants (Doc. 52) submitted supplemental responses. The Court held a second evidentiary hearing on December 8, 2020.

## BACKGROUND

**A. Procedural Background**

On August 6, 2020, Plaintiff Joshua Hoskins, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, filed a Complaint alleging Defendants were deliberately indifferent in denying him access to medications and retaliating against him for filing grievances and lawsuits (Doc. 1). More specifically, Defendants denied him access to mental health services and his psychotropic medications and threatened him with disciplinary action if he attended mental health

appointments (Doc. 14, pp. 2-3). They also threatened to transfer him to Menard Correctional Center and made efforts to keep him in his current housing unit so that they could continue to harass him.

On August 21, 2020, Hoskins filed the pending motion for preliminary injunction (Doc. 12). He alleged that Defendant Rodman informed him that Defendants planned to create a false disciplinary ticket in order to transfer him to Menard because of Hoskins's grievances and lawsuits. He told Hoskins they intended to have a staff member say that Hoskins assaulted him or would have their confidential informants lie and say he participated in security threat group activity. He also alleged that Defendants threatened to move him to one of two other cell houses in Pinckneyville, R3 or R5 house, or keep him in his current location in R4 house, so that Defendants could continue to threaten him.

Given the seriousness of the allegations, the Court added Jeff Dennison, the warden of Pinckneyville, in his official capacity, for purposes of responding to the motion. Dennison filed a response indicating that Hoskins's request was moot because he had already been moved to a different cellhouse (Doc. 20, p. 4). On August 27, 2020, Hoskins was moved to R2 cellhouse, which was not one of the cellhouses which he previously alleged Defendants were present and could continue to threaten him (*Id.*). Dennison also argued that Hoskins focused his allegations in his motion against Defendant Rodman and third-party individuals Klinger, Thomas, and Boules who conspired with Rodman to keep him in cellhouses where other Defendants could harass him. Dennison argued that these were new allegations of retaliation unrelated to the claims in his lawsuit and that Hoskins had not shown a threat of imminent harm


justifying the Court's intervention in the day-to-day operations of the prison. Finally, Dennison argued that Hoskins was not entitled to relief because he failed to exhaust his administrative remedies prior to filing suit.

In Hoskins's reply brief, he alleged that he was not housed in R2 cellhouse, but rather placed in R1 cellhouse on September 22, 2020, and then moved to R3 cellhouse at the request of Defendants Brock, Baker, and Rodman, as well as non-defendant Jurkowski, so that they could keep him from accessing mental health services (Doc. 23, p. 4). They also threatened to keep him from accessing the showers and hygiene products (*Id.*). They threatened that if he was able to transfer to another housing unit Majors Cleland and Adams, who are not defendants in this case, would transfer other staff to those units that would continue to harass Hoskins (*Id.*). They also threatened to fabricate serious disciplinary charges against him, including having inmates state that he posed a threat to staff and inmates, so that Hoskins could be transferred (*Id.* at p. 2).

His reply brief also alleged that he had received threats from Defendant Brock, as well as non-party individuals Bartoloh, Bell, and Hankins, to transfer him to Menard in retaliation for filing grievances and lawsuits. Specifically, he received a threat from Bartoloh and Bell on September 12, 2020 (*Id.* at p. 1). They indicated that they were working with several defendants and non-party officers to fabricate serious disciplinary charges against him (*Id.*).

### B. First Evidentiary Hearing

At the first evidentiary hearing, held on October 20, 2020, Hoskins testified that he is currently in R3 cellhouse. On September 22, 2020, Defendant Baker told him to refuse

his medications or he would be given a false disciplinary ticket for a staff assault. Hoskins has refused to accept his medications. He has talked to mental health staff about his issues, but Hoskins testified that they are afraid to write reports on other staff.

As to the earlier statements made by Rodman, Hoskins testified that those were made while Rodman was conducting a box check. Although other inmates heard the statements, Hoskins stated that they would not submit an affidavit to support his motion out of fear of retaliation. Rodman was never directly at his cell and yelled at Hoskins from a few cells down, past C-70.

He acknowledged that he was previously placed in segregation on investigative status because a kite from an inmate alleged that Hoskins was going to rape and kill a female officer. He believes this was Defendants' attempts to get him transferred. Prior to being placed in investigative status Defendant Bell and non-defendant Bartolotti told him they were going to have an officer or an inmate falsify a kite stating that he threatened a female officer in order to get him transferred to another facility. Hoskins also acknowledged that he previously received a disciplinary ticket on May 11, 2020, for yelling at the same officer and threatening to kill and rape her. Hoskins testified, however, that someone else yelled those threats and pretended to be him. Although he was issued a ticket, Hoskins testified that the officer never properly identified him as the inmate yelling threats.

C. **Supplemental Briefs**

After the hearing, the record was left open so that Defendants could submit a video of Rodman's box check. The parties were also given an opportunity to file supplemental

briefs.

Hoskins filed several supplements (Docs. 38, 42, 55, and 59). His supplements mostly sought to clarify his testimony. He stated that he never indicated that he and Rodman spoke face to face. He testified that Rodman was a few cells down from his cell and conducting a cell check. He also stated that Rodman was not afraid to make statements to him in front of other inmates and staff because Rodman is a member of the investigative unit and would be charged with investigating any complaints against himself (Doc. 38). Hoskins also informed the Court that he filed another lawsuit about Rodman's actions and threats on October 10, 2020. *Hoskins v. Rodman*, Case No. 20-cv-1068-DWD. He continued to request a transfer to another cellhouse or an order from the Court keeping Defendants away from him.

Hoskins also clarified that he was on investigative status for an anonymous kite by an inmate stating that Hoskins threatened a female guard (Doc. 38, pp. 2-3). Hoskins believes the kite was created by a staff member in order to further Defendants' goals of disciplining him. He states he was told by Rodman and Frank that they would use the disciplinary report to justify placing him in R3 (*Id*. at p. 3).

Defendants submitted the video of Defendant Rodman's August 17, 2020 box check. They also played the video at the December 8, 2020 evidentiary hearing. Rodman testified in an affidavit that he retrieved the camera footage from Cellhouse 4 C-Wing (Doc. 52-1, p. 1). The video shows Rodman walking up the stairs and then going off screen to search Cell-52 (*Id*.). Later, Rodman crosses the stairs and stops at C-73 (*Id*. at p. 2). At the time of the search, Hoskins was located in C-66 (*Id*.). Hoskins is removed from his cell

at 1:50 in the video. Rodman began searching C-73 at 2:07 on the video and Hoskins was placed back in his cell before Rodman completed the search of C-73 (*Id.*).

Hoskins's reply (Docs. 55 and 59) reiterated that he never spoke to Rodman at his cell. He testified that Rodman was a couple of cells away at either C-71 or C-72. He also stated that Rodman yelled out loud to him during the cell checks (Doc. 59, p. 2). Hoskins further acknowledged that he filed a new suit against Rodman for his actions on August 17, 2020. He noted that the allegations in that Complaint did not state the exact details of Rodman's statements because he is required to keep his Complaint to a short statement.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning."

*AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

Simply put, Hoskins fails to meet his burden of demonstrating that he is entitled to injunctive relief. He has not shown a likelihood of success on the merits. The Court reviewed the surveillance footage of the incident with Rodman both prior to and at the second evidentiary hearing. Although Hoskins testified that Rodman yelled at him from several cells down, the Court does not find his testimony to be credible. In the video, Rodman is outside of C-73, and Hoskins outside of C-66. Between the two are several guards and inmates. The film does not contain audio, but it is not plausible that Hoskins heard Rodman yell threats at him given the distance, commotion in the cellhouse, and the number of individuals separating Hoskins from Rodman. The Court also does not

find it plausible that Rodman would make such threats in front of a number of witnesses. Hoskins's testimony that Rodman threatened him during this time period is not credible. Thus, Hoskins fails to demonstrate that he is likely to succeed on his claims as it relates to the incident with Rodman.

Further, the Court notes that the claims against Rodman and other non-party individuals in Hoskins's motion are unrelated to the claims in this suit. Although Hoskins alleges that Defendants in this case retaliated against him by threatening to transfer him to another prison, he actually has another case pending against Rodman and other individuals who are identified in his motion. In *Hoskins v. Rodman*, Case No. 20-cv-1068-DWD, Hoskins brings claims against Rodman for the threats made during the box check. He also brings claims against the other individuals identified in his motion for preliminary injunction for the events described in the motion. Thus, any request for injunctive relief related to those claims are more properly brought in his new case because they are unrelated to the specific allegations in his current case.

## CONCLUSION

For these reasons, the motion for preliminary injunction (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** December 9, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**