**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JOSHUA HOSKINS, #R-54570,**

  **Plaintiff,**

**v.**                                          **Case No. 3:20-cv-766-NJR**

**JANA RUETER, DAVID BROCK,
CHAD WALL, CHARLES HECK,
ERIC WANGLER, MICHAEL BAILEY,
GARRICK HALE, BRANDON LUEKER,
WESLEY SHIRLEY, PHILLIP BAKER,
AUSTIN HAGSTON, PATRICK PEEK,
JAMES GROVES,
CHARLES SWISHER, JOSEPH DUDEK,
ANTHONY MAYS, MARK BELL,
KALE LIVELY, SCOTT PETITJEAN,
ALEXANDER RODMAN,
and JEFF DENNISON,**

  **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Jana

Rueter (Doc. 71)[1] and the Motion for Summary Judgment filed by the other twenty

Defendants: Brock, Wall, Heck, Wangler, Bailey, Hale, Lueker, Shirley, Baker, Hagston,

Peek, Grove, Swisher, Dudek, Mays, Bell, Lively, Petitjean, Rodman, and Dennison

(hereinafter, "IDOC Defendants") (Doc. 80). Both motions assert that Plaintiff Joshua

Hoskins failed to exhaust his administrative grievance remedies before filing this suit.

---

[1] Rueter later filed additional exhibits (Doc. 95) inadvertently omitted from her supporting
memorandum.

Hoskins filed a combined response in opposition to both motions (Doc. 83). He subsequently filed several additional documents to supplement his response and provide exhibits (Docs. 87, 91, 92, 98, 99, 100).

On September 14, 2021, the Court held an evidentiary hearing on both motions. Hoskins filed an additional response to the motions the following day (Doc. 106) and another on September 22, 2021 (Doc. 107).

BACKGROUND

On August 6, 2020, Hoskins filed a Complaint alleging that Defendants were deliberately indifferent to his mental health needs and retaliated against him for filing grievances and lawsuits, while he was incarcerated at the Pinckneyville Correctional Center ("Pinckneyville") between June 11, 2020, and August 5, 2020. (Doc. 1). Hoskins stated that Defendants told him they were aware that he had reported staff conduct to his mental health providers, including threats by a number of staff members to stop him from receiving his psychiatric medications. (Doc. 1, p. 53; Doc. 14, pp. 2-3; Doc. 83, pp. 17, 23, 26, 35, 66). Because of this, Defendants directed Hoskins to refuse his mental health appointments and medications and threatened him with disciplinary action and physical harm if he did not. *Id.*

Following the required screening, Hoskins was allowed to proceed on the following claims:

Count 1:    Eighth Amendment deliberate indifference claim against Defendants Rueter, Brock, Wall, Heck, Wangler, Bailey, Hale, Lueker, Shirley, Baker, Hagston, Peek, Grove, Swisher, Dudek, Mays, Bell, Lively, Petitjean, and Rodman for denying Hoskins access to mental health care and medications.

2

Count 2:     First Amendment retaliation claim against Defendants Rueter, Brock, Wall, Heck, Wangler, Bailey, Hale, Lueker, Shirley, Baker, Hagston, Peek, Grove, Swisher, Dudek, Mays, Bell, Lively, Petitjean, and Rodman for denying Hoskins access to mental health care and medications, and threatening him in retaliation for filing grievances, lawsuits, and reporting staff conduct.

(Doc. 14, p. 4). Pinckneyville Warden Jeff Dennison was added as a defendant in his official capacity only, to implement any injunctive relief that may be ordered. (Doc. 14, p. 5). The Court notes that Hoskins has not been housed at Pinckneyville since April 8, 2021, having been transferred to Dixon Correctional Center on that date. (Doc. 88).

Rueter's motion identifies three grievances (listed below) in which Hoskins complained about Rueter's conduct.[2] Rueter argues Hoskins failed to resubmit them as directed to provide dates and thus failed to exhaust them. (Doc. 73, pp. 3-4, 10). The IDOC Defendants' motion focuses on the same three grievances (Doc. 81, pp. 2-3; Doc. 81-2, pp. 7-8, 16-19), similarly arguing that Hoskins failed to resubmit them and thus never exhausted his available administrative remedies.

**1. July 6, 2020 Grievance (No. 1660-07-20)** (Doc. 73-1, p. 2; Doc. 73-2, pp 13-14; Doc. 81-2, pp. 16-17):[3] Hoskins wrote this grievance to inquire about the status of several grievances he had previously filed against security staff and medical staff, some handed directly to counselor Reid and some placed in the black grievance box. This grievance states Hoskins's earlier grievances included complaints against Wangler, Heck, Shirley, Wall, Dudek, Groves, Peek, Petitjean, Lueker, Swisher, Hale, Hagston, Hess, Rueter, Brock, Mays, and other staff for restricting his religious practices

---

[2] Rueter's supporting memorandum (Doc. 73) lists three other grievances filed by Hoskins during the relevant time frame of June 11, 2020, to August 5, 2020: No. 1346-05-20 (June 19, 2020); No. 1557-06-20 (June 22, 2020); and No. 1576-06-20 (June 22, 2020). (Doc. 73, pp. 2-3). None of these grievances raised issues relevant to this lawsuit. The first two grievances complained that staff had improperly confiscated property items from Hoskins and the third alleged that Hoskins was not given bedding and clothing upon his discharge from segregation. (Doc. 73, pp. 2-3).

[3] The copies of grievances filed at Doc. 81-2 are much more legible than those in Doc. 73-2.

and interfering with his access to his prescribed psychiatric medications, on 4/18/2020 and prior dates. He gave the earlier grievances to Reid in April and June 2020 but never got a response. This grievance was returned to Hoskins on July 9, 2020, with instructions to submit a new grievance with the dates of the incidents. (Doc. 73-1, p. 2; Doc. 73-2, p. 13; Doc. 81-2, p. 16). The IDOC records do not show that Hoskins ever resubmitted this grievance or filed a new one to include the relevant dates. There also is no record of Hoskins having filed the earlier grievances he claims to have submitted.

**2. July 14, 2020 Grievance (No. 1735-07-20)** (Doc. 73-1, p. 2; Doc. 73-2, pp. 11-12; Doc. 81-2, pp. 18-19): As with the July 6 grievance, Hoskins claims he had written earlier grievances in May, June, and July 2020 against Rueter, Lueker, Hale, Swisher, Hagston, Mays, Brock, Dudek, Grove[s], Wall, Heck, Wangler, Petitjean, Shirley, Lively, Baker, Bailey, and others for denying him access to his psychotropic medications and other necessities, and denying him free exercise of religion, but never got an acknowledgement of receipt, a grievance number, or a response. This grievance was returned to Hoskins on July 16, 2020 with the note that Hoskins did not include dates when the incident(s) occurred and should submit a new grievance. (Doc. 73-1, p. 2; Doc. 73-2, p. 11; Doc. 81-2, p. 18). There is no record that Hoskins filed a new or resubmitted grievance to provide the dates.

**3. August 3, 2020 Grievance[4] (No. 1884-08-20)** (Doc. 73-1, pp. 1-2; Doc. 73-2, pp. 2-3; Doc. 81-2, pp. 7-8): Again, Hoskins sought the status and grievance numbers for grievances he claims to have filed over denial of medications and other necessities, interference with his access to mental health care, and hindrance of his religious practice. He claims that staff "gave retaliatory reasons" for their conduct. He names Lueker, Swisher, Hagston, Hale, Bailey, Brock, Dudek, Grove[s], Peek, Bell, Mays, Wangler, Wall, Heck, Shirley, Baker, Petitjean, Lively, Rueter, Rodman, and others. He claims that mental health staff failed to make their rounds and falsified information to state that he was basically fine, stable, and had no issues. (Doc. 81-2, pp. 7-8). The counselor responded on August 12, 2020 that Hoskins omitted the dates of the incidents and should submit a new grievance. (Doc. 73-1, p. 1; Doc. 73-2, p. 3; Doc. 81-2, p. 7). There is no record of the grievance being resubmitted to provide the dates. (Doc. 73-2, p. 2; Doc. 81-1).

---

[4] Hoskins dated this grievance August 3, 2020, and it was received by the grievance office on August 4, 2020. (Doc. 73-1, p. 2; Doc. 81-2, p. 7). Rueter refers to it by the August 4 date. The Court will reference it with the August 3, 2020 date.

LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir.

2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative

defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is
> therefore as follows: (1) The district judge conducts a hearing on exhaustion
> and permits whatever discovery relating to exhaustion he deems
> appropriate. (2) If the judge determines that the prisoner did not exhaust
> his administrative remedies, the judge will then determine whether (a) the
> plaintiff has failed to exhaust his administrative remedies, and so he must
> go back and exhaust; (b) or, although he has no unexhausted administrative
> remedies, the failure to exhaust was innocent (as where prison officials
> prevent a prisoner from exhausting his remedies), and so he must be given
> another chance to exhaust (provided that there exist remedies that he will
> be permitted by the prison authorities to exhaust, so that he's not just being
> given a runaround); or (c) the failure to exhaust was the prisoner's fault, in
> which event the case is over. (3) If and when the judge determines that the
> prisoner has properly exhausted his administrative remedies, the case will
> proceed to pretrial discovery, and if necessary a trial, on the merits; and if
> there is a jury trial, the jury will make all necessary findings of fact without
> being bound by (or even informed of) any of the findings made by the
> district judge in determining that the prisoner had exhausted his
> administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Hoskins was required to follow the regulations contained in

IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly

exhaust his claims. 20 Ill. Administrative Code § 504.800 *et seq*. The grievance procedures

first require inmates to file their grievance with the counselor within 60 days of the

discovery of an incident. 20 Ill. Admin. Code § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint,
> including what happened, when, where, and the name of each person who
> is the subject of or who is otherwise involved in the complaint. This
> provision does not preclude an offender from filing a grievance when the

6

names of individuals are not known, but the offender must include as much
descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(c). Grievances that are unable to be resolved through
routine channels are then sent to the grievance officer. 20 Ill. Admin. Code § 504.820(a).
The Grievance Officer will review the grievance and provide a written response to the
inmate. 20 Ill. Admin. Code § 504.830(a). "The Grievance Officer shall consider the
grievance and report his or her findings and recommendations in writing to the Chief
Administrative Officer within two months after receipt of the grievance, when reasonably
feasible under the circumstances." 20 Ill. Admin. Code § 504.830(e). "The Chief
Administrative Officer shall review the findings and recommendation and advise the
offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative
Officer ("CAO"), he or she can file an appeal with the Director through the
Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f,
after receiving the response of the Chief Administrative Officer, the offender still believes
that the problem, complaint or grievance has not been resolved to his or her satisfaction,
he or she may appeal in writing to the Director. The appeal must be received by the
Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin.
Code § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and
the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to
the Director a written report of its findings and recommendations." 20 Ill. Admin. Code
§ 504.850(d). "The Director shall review the findings and recommendations of the Board

and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code § 504.850(f).

If an inmate submits a grievance but never receives a response, then his attempts at exhaustion will be deemed thwarted, and he is allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable

to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

### ANALYSIS

It is undisputed that Hoskins did not fully exhaust the above three grievances. He testified that there was no point in submitting these grievances to the next level of review, because the outcome would be the same—they would be rejected for having omitted the dates when the medication denials and other conduct occurred.

Hoskins claims that counselors have refused to process or return grievances he filed against staff members when the allegations were serious enough to result in legal or disciplinary action against staff and have told him they would not process such complaints. His responses to the motions essentially argue that he filed the three grievances listed above to complain that his original grievances over the relevant conduct were lost, ignored, or otherwise not processed, thus he was thwarted in his attempt to exhaust the matter through the administrative process. He claims that when he repeatedly complained about grievances not being returned to him, counselors told him the grievances had never been received. He therefore concluded he was entitled to file his suit because it was clear his attempts to exhaust had become futile. (Doc. 83, pp. 14-15). He notes that those grievances that did not involve serious allegations of staff misconduct were processed; he claims the grievance process was only unavailable to him in those instances where he complained about conduct that could get staff fired or disciplined. (Doc. 83, p. 16).

Hoskins's filings reference orders in several other unrelated cases in this Court as

examples where he made similar arguments, and he asks the Court to consider the rulings on exhaustion in several of those cases when deciding the motions at issue here. (Doc. 83, pp. 1-3; Docs. 91, 99, 100).[5] He states that he sent many written inquiries directly to the ARB prior to filing this suit, complaining that officers refused to process his grievances. (Doc. 83, pp. 2, 25, 28-30, 34, 50-52, 55-57, 59, 61-62). Hoskins explains he is well aware of the exhaustion requirement because of his experience with previous lawsuits. He knows how to file and exhaust grievances and has no reason to intentionally skip or avoid the grievance process, because he knows that if he does so, his lawsuit is subject to dismissal. (Doc. 83, pp. 3-5). He wrote the allegedly missing grievances relevant to his claims while he was housed in R4 house at Pinckneyville, placing them in the R4C grievance box in June 2020, July 2020, and August 2020, but he never received them back with a grievance number, response, or receipt. (Doc. 83, p. 5). He asked counselors Ms. Hill and Mr. King (who are not defendants in this case) if he could personally hand his grievances to them, but they refused and instructed him to use the grievance box. (Doc. 83, pp. 5-6). He argues that the counselors' refusal to allow him to hand-deliver grievances to them frustrated his ability to prove he submitted the grievances. (Doc. 106, p. 4).

Hoskins asserts counselor Reid was lying when he documented on June 4, 2020 that Hoskins had no issues (Doc. 73-1, p. 2), because Reid would not have admitted that

---

[5] Subsequent to Hoskins's filing of his response, the issue of exhaustion was resolved in Hoskins's favor in some of the cases he mentions. *See Hoskins v. Swisher, et al.*, Case No. 20-cv-302-RJD (Doc. 116, June 1, 2021, denying motions for summary judgment); *Hoskins v. Swisher, et al.*, Case No. 20-cv-395-MAB (Doc. 115, Aug. 21, 2021, denying motions for summary judgment); *Hoskins v. Rueter, et al.*, Case No. 20-cv-549-DWD (Doc. 119, June 30, 2021, granting motions for summary judgment); *Hoskins v. Swisher, et al.*, Case No. 20-cv-533-SPM (Doc. 82, July 26, 2021, granting in part and denying in part motion for partial summary judgment).

he told Hoskins his grievances against staff for serious conduct would not be processed. (Doc. 83, pp. 6-7). Hoskins makes the same allegation against counselors Brown and King. (Doc. 83, p. 11). Notably, these individuals are not defendants in this case.

Hoskins further argues that he should not have been required to cite the dates of the occurrences and resubmit the grievances listed above, because grievance officers are able to access his prior pending grievances and locate that information. (Doc. 83, pp. 7-8, 14; Doc. 106). His filings and his testimony noted that several of his grievances on unrelated matters, both before and after the period relevant to this lawsuit, had been reviewed, investigated, and fully processed even though he had not included pertinent dates. (Docs. 106, 107).

Upon extensive questioning at the recent hearing, Hoskins testified that after he was told to resubmit the July 6 and July 14 grievances to include dates, he did in fact rewrite and resubmit two grievances to complain about Rueter's and the other Defendants' conduct of denying him access to medications and mental health treatment. The resubmitted grievances included the relevant dates, and Hoskins placed them in the grievance collection box because the counselors would not allow him to personally hand them his grievances. He was aware that he had only a few days left before the expiration of the 60-day deadline to submit his grievances. Hoskins had noted the dates of the incidents because he keeps personal notes to record this information. He did not make any copies of the resubmitted grievances because such copies would not prove they were resubmitted in the absence of any notation by prison staff of their receipt. Hoskins testified that he never got back any receipts after resubmitting the grievances and never

received any responses.

After considering Hoskins's testimony and written submissions, the Court concludes that his claim to have resubmitted the grievances complaining about Defendants denying him access to mental health care and medications is not credible.[6] In all the many pages Hoskins submitted in response to the motions for summary judgment, he never asserted that he refiled the grievances to include dates of the incidents that prompted his original (lost/unprocessed) grievances, after the first two grievances listed above were returned to him on July 9 and July 16, 2020.[7] He made this claim for the first time in the evidentiary hearing. If Hoskins indeed refiled those grievances promptly after the counselor instructed him to do so, why didn't he previously inform the Court of this fact in any of his multiple filings over the last six months?

While Hoskins submitted numerous copies of other unrelated grievances and letters to the ARB in which he complained about his grievances not being processed (Doc. 83, pp. 25, 28-30, 34, 50-52, 55-57, 59, 61-62; Doc. 106, p. 14), none of those grievances or ARB correspondence were written during the relevant dates of the conduct that led to *this lawsuit*, June 11, 2020 through August 5, 2020. His exhibits include documents dated as early as June 2019 (Doc. 83, pp. 21-22), and as recently as May 2020 (Doc. 83, pp. 31-33), on matters unrelated to the claims in this case. His most recent letters to the ARB

---

[6] At Hoskins's request, the Court has also reviewed and taken judicial notice of the decisions of fellow judges in this district in several of Hoskins's other cases where exhaustion was at issue. None of those cases involved the time frame at issue in this matter.

[7] Hoskins did not receive the August 3, 2020 grievance (No. 1884-08-20) back with instructions to refile until August 12, 2020. By that time he had already filed this case on August 6, 2020.

were dated in March 2020. Hoskins also filed copies of a January 2021 grievance and response over unrelated grievances not being processed. (Doc. 83, pp. 63-65; Doc. 92, p. 8). He presented no documentation of any letters or other inquiries regarding the unprocessed/unreceived grievances he claims to have filed over the conduct at issue in this case, however, and he does not claim to have made such inquiries after he refiled the grievances. The Court finds that the absence of any follow-up effort regarding the two grievances he allegedly resubmitted in July 2020 undermines his credibility. This gap contrasts sharply with Hoskins's multiple letters to the ARB relating to the failure of officials to process his grievances in 2019 and early 2020.[8]

In summary, the Court concludes that Hoskins failed to exhaust his administrative remedies as to the Defendants' conduct at issue in this action before filing suit. His newly asserted claim that he resubmitted his grievances in July 2020 after Grievance Numbers 1660-07-20 and 1735-07-20 were returned to him lacks credibility. Accordingly, the Motions for Summary Judgment will be granted.

### DISPOSITION

Defendant Rueter's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 71) and the IDOC Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 80) are **GRANTED**, and this entire action is

---

[8] The Court notes that Hoskins does not claim to have complained to any prison administrators about his grievances not being processed during the time in question, and the record is devoid of such efforts. Hoskins testified that he didn't write to the ARB during the relevant time frame because he did not have postage.

**DISMISSED without prejudice** for Hoskins's failure to exhaust his administrative remedies.

The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

If Hoskins wishes to appeal the dismissal of this case, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(a)(1)(A). If Hoskins does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED:  September 23, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**